# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**ROCKIE RENEE HOY,**

        Plaintiff,

      v.

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

Case No. 6:15-cv-2049-YY

**FINDINGS AND RECOMMENDATION**

**YOU, Magistrate Judge:**

Plaintiff, Rockie Renee Hoy ("Hoy"), seeks to reverse and remand the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under titles II and XIV of the Social Security Act. This court has jurisdiction under 42 USC § 405(g) and§ 1383(c). Because the Commissioner's decision is supported by substantial evidence and free of legal error, it should be affirmed.

///

///

///

## ADMINISTRATIVE HISTORY

Hoy filed applications for DIB and SSI on March 28, 2012, alleging a disability beginning January 1, 2011, due to cervical spine degenerative disc/joint disease with radiculopathy, posttraumatic stress disorder, substance abuse, and peripheral neuropathy. Tr. 184–91, 275.[1]  After the Commissioner denied her applications initially and upon reconsideration, Hoy requested a hearing that was held on February 5, 2014. Tr. 36–63, 126–45. On March 20, 2014, the Administrative Law Judge ("ALJ") issued a decision finding Hoy not disabled. Tr. 30. The Appeals Council denied Hoy's subsequent request for review on October 1, 2015. Tr. 1–6. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 CFR §§ 404.981, 422.210.

## BACKGROUND

Born in April, 1960, Hoy was 53 years old on the alleged onset date. Tr. 184. She completed the 11th grade, and has past work experience as a bartender and as a waitress. Tr. 212.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on March 18, 2016 (ECF #16).

*Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1205 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)); *see also Lingenfelter*, 504 F.3d at 1035.

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 CFR §§ 404.1502, 404.920.  First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity."  *Yuckert*, 482 U.S. at 140; 20 CFR §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140–41; 20 CFR §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140–41; 20 CFR §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 CFR §§ 404.1520(f), 404.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141–42; 20 CFR §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 CFR §§ 404.1566, 416.966.

## **ALJ'S FINDINGS**

At step one, the ALJ found that Hoy had not engaged in substantial gainful activity after the alleged onset date. Tr. 21.

At step two, the ALJ found that Hoy has the following severe impairments: cervical spine degenerative disc/joint disease with radiculopathy, posttraumatic stress disorder, and alcohol and methamphetamine abuse in reported remission. *Id.*

At step three, the ALJ found Hoy did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 22. The ALJ next assessed Hoy's RFC and determined that she could perform light work with the following limitations: she cannot stand or walk up to five hours; she can never climb ladders, ropes, and scaffolds, or crawl, and can perform incidental stooping and balancing; she can occasionally reach overhead

bilaterally; she can frequently handle, finger, and feel; she must avoid concentrated extremes of temperature, vibration, fumes, odors, dusts, and hazards; she can work in an environment with a noise level of three or less; she can perform production-paced work; and she can perform only simple, repetitive work consistent with unskilled work.  Tr. 23.

At step four, the ALJ found Hoy could not perform any of her past relevant work.  Tr. 28. At step five, the ALJ determined Hoy could perform jobs that exist in significant numbers in the national economy, including mail sorter and price marker.  Tr. 29.  The ALJ therefore concluded Hoy is not disabled.  Tr. 30.

## DISCUSSION

Hoy argues that the ALJ erred by: (1) rejecting her subjective symptom testimony; (2) improperly evaluating the medical evidence; and (3) failing to include all of her severe impairments at step two.

### I.    Hoy's Testimony

This court begins by analyzing the ALJ's assessment of Hoy's credibility, because other findings hinge on that analysis.  In evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms, a two-step process is employed.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).  When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; [the ALJ] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's credibility decision may be upheld overall even if all of the ALJ's reasons for rejecting the claimant's testimony are not upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Effective March 16, 2016, a new Social Security Ruling ("SSR") took effect regarding assessment of a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)(superceding SSR 96-7p). SSR 16-3p eliminates the reference to "credibility" assessments, clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons;

and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6–7.

Here, the ALJ's March 2014 decision predated SSR 16-3p by two years and there is no binding precedent establishing that this new ruling applies retroactively. *Garner v. Colvin*, 626 Fed.Appx. 699, 701 (9th Cir. 2015) ("we cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time"); see also *Ashlock v. Colvin*, 3:15-CV-05767-DWC, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date); *but cf., Lockwood v. Colvin*, No. 15 C 192, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings regarding Hoy's subjective symptom testimony pass muster irrespective of which standard governs, the court does not need to resolve the issue of retroactivity.

///

///

### 1.    <u>Meager treatment history and varied complaints</u>

The ALJ found Hoy lacked credibility for a number of reasons.  First, the ALJ determined that Hoy's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were "not entirely credible."  Tr. 24.  The ALJ characterized Hoy's complaints as follows:

> At the hearing, the claimant testified that her hands, back, neck, and mental impairments are the primary conditions that prevent her from working.  The claimant testified that after surgery she continued to having tingling in her finger tips and that tingling worsened in the right arm.  The claimant noted that she has pins and needles in her hands up to her shoulders.  The claimant described having limited range of neck motion, including looking left and right and up and down.  The claimant further testified that she has achy, constant pain.  She noted that she has daily headaches and migraines about 3 to 4 times a month.  She said that she lies down and goes to sleep when a migraine occurs.  As to mental symptoms, the claimant testified that she has paranoia and cries all the time.  She said that she has panic attacks 2 to 3 times a day and that she is confused all the time.  The claimant testified that she stays away from people.  She described trouble sleeping due to legs cramping and racing thoughts.

Tr. 24.

The ALJ found that Hoy's "very meager treatment history and largely unremarkable physical exam" in 2011, the year of her onset date, did not support her complaints.  *Id.* Specifically, on the one occasion Hoy sought treatment in 2011, it was for an unrelated illness— acute viral syndrome.  Tr. 297–302.  While she complained of anxiety and numbness in her fingers, her physical exam was mostly within normal range and there were no associated visual or neurological deficits.  *Id.*  Although she alleged shortness of breath due to anxiety, she appeared to be in only mild distress.  *Id.*

The ALJ also noted that in the following two years Hoy "had only sporadic, varied complaints."  Tr. 25.  She sought treatment for numbness in May 2012, but did not seek further

medical care for related symptoms for the remainder of the year. Tr. 336, 407, 410–11. In January 2013, Hoy was seen for osteoarthrosis and diabetes. Tr. 403–04. In April 2013, Hoy alleged sharp pain in her feet and numbness in her left fingers. Tr. 400. In September 2013, Hoy sought treatment for hip tenderness but did not complain of numbness. Tr. 383, 390 (exhibiting no gait abnormalities). Hoy did not report numbness again until December, 2013, when she complained of symptoms in her right arm. Tr. 369.

The ALJ properly considered Hoy's sporadic treatment and inconsistent symptoms in assessing her credibility. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 CFR §§ 404.1529(c)(3), 416.929(c)(3). A history of inconsistent symptoms is another legally sufficient reason for rejecting a claimant's testimony. *Id.*

Hoy contends that the ALJ improperly used her "meager treatment history" as a basis for undermining her credibility because she lacked health insurance and could not afford treatment. Plaintiff's Opening Brief, ECF #17, at 14–15. Hoy testified she had no health insurance since March 2010 when she was let go from work. Tr. 43–44.

Hoy is correct in that an ALJ may not reject a claimant's testimony where absence of treatment was due to lack of insurance or insolvency. *Smolen,* 80 F.3d at 1284. In Hoy's case, the ALJ considered this argument but also and found that, "[w]hile financial constraints may have affected [Hoy's] ability to obtain medical care, one would still expect to find some degree of effort to alleviate symptoms if they had been as limiting as alleged." Tr. 24. Even if the ALJ improperly used Hoy's "meager treatment" as a basis for questioning her credibility, any error in doing so "was harmless, because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record," specifically

Hoy's inconsistent symptoms and other reasons, which are discussed below. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### 2. <u>Lack of objective medical evidence</u>

The ALJ also found that Hoy's complaints conflicted with the objective medical record. Tr. 24–26. "Although lack of medical evidence cannot form the sole basis for discounting [a claimant's testimony], it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ pointed out that treatment notes from an examination in May 2011 revealed a normal neck and cervical examination, no neurological symptoms, and only some finger numbness. Tr. 24–26, 299–300. Additionally, despite subjective complaints in 2012 about numbness in her hands and decreased triceps reflex on the right side, Hoy exhibited normal grip strength and her upper extremity strength testing was equal symmetrically. Tr. 24–25. In 2013, Hoy displayed normal reflexes, no signs of atrophy, negative Romberg testing, normal gait, slightly diminished muscle strength, normal strength in her left upper extremity and lower extremities, and intact sensation to light touch in the upper extremities. Tr. 371. The ALJ observed that Hoy's performance on mental exams was similarly inconsistent with the alleged severity of her symptoms. Tr. 25. Because the objective medical evidence fails to substantiate Hoy's complaints, it adds additional weight to the ALJ's rejection of Hoy's testimony.

### 3. <u>Inconsistent statements regarding alcohol and drug use</u>

The ALJ also questioned Hoy's credibility because she made inconsistent statements regarding her alcohol and drug use. Tr. 26.

> Inconsistencies by the claimant raise another credibility concern. For example, during one consultative exam in August 2012, the claimant reported that she used alcohol minimally. She denied use of illicit substances other than "marijuana years ago" (Exhibit

6F.3). Yet, less than a week later, during another consultative exam, the claimant said she drank no alcohol (Exhibit 7F.3). Moreover, at the hearing, the claimant testified that she stopped drinking alcohol over two years ago. The claimant also denied a problem with methamphetamine. However, the record shows otherwise. During the course of treatment in January 2012, the claimant reported that she drank alcohol occasionally (Exhibit 2F.16). In addition, she admitted to some degree of drinking in August 2012 (Exhibit 6F.3; see also 3F.2). Further, a mental health provider reported a history of methamphetamine abuse did occur between 2004 and 2005 (Exhibit 13F.3). Such evidence suggests that the claimant has been less than candid and casts further doubt on her self-report.

Tr. 26. The ALJ's conclusions are supported by the record. *See* Tr. 44–45 (denying any alcohol use for two years at the February 2014 hearing), Tr. 321 (stating in March 2012 that she drank alcohol occasionally), Tr. 331 (reporting weekly alcohol use in March 2012), Tr. 344 (August 2012 note reporting last use of alcohol was on July 4 of that year), Tr. 350 (stating she drank no alcohol in August 2012); Tr. 471 (treatment note documenting a history of methamphetamine abuse during "2004 – 2005").

Even during the April 2014 hearing, Hoy was not forthcoming about her alcohol use until she was pressed about it by the ALJ. Hoy initially denied consuming alcohol within the previous two years, but when the ALJ confronted her about a medical report that documented alcohol consumption within that two-year period, she admitted she had consumed alcohol just five months before:

> ALJ:   When did you stop drinking?
>
> HOY:  I haven't drank going on, I think it's a little over two years, Your Honor.

Tr. 44–45.

> Q:     …[Referring to the questionnaire completed by Barbara Alexander and Jack Kaczmarek, M.D.,] it says "When did she stop using those substances? It says methamphetamine

> 2004 to 2005" and underneath that it's got 2008 to '13.
> "Had one beer around Thanksgiving/Christmastime."
>
> …So what is this business about 2008 to 2013?

A:    I don't recall, with the alcohol?

Q:    I don't know.  I'm asking you.

A:    It was probably from the alcohol.  I'm not a meth user.  My
      daughter has a really bad problem with meth, so.

Q:    So you also said stopped alcohol about two years ago.
      What about this one beer around Thanksgiving/
      Christmastime, was it just one beer?

A:    It was just one beer, that it was at my mom's trailer in
      Amboy, Washington and there was one in there and I just
      slammed it.

Tr. 54–55.

Hoy's conflicting accounts about drug or alcohol use constitute a specific, clear and
convincing reason to discount her testimony.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th
Cir. 2002) (finding discrepancy in alcohol and drug use supported ALJ's conclusion regarding
claimant's lack of veracity).

### 4.    **Reason for stopping work**

The ALJ found that "[t]he reason [Hoy] stopped working and when raises a credibility
concern."  Tr. 26.  Specifically, the ALJ found as follows:

> The claimant's last employment ended nearly a year before the
> alleged onset date due to a lay-off, not a medical condition (Exhibit
> 2E). Moreover, when asked the basis for her alleged onset date, the
> claimant could not explain the significance of that date.  When
> asked when she thought she became unable to work, the claimant
> testified "probably" right after her surgery, which occurred in April
> 2012.  During follow-up questioning, the claimant further
> explained that she was able to work after the alleged onset date,
> but that she could not have done her prior job as a waitress.  This is
> wholly inconsistent with the claimant's contention that she has

> been unable to work and puts into question whether her continued
> unemployment is actually secondary to a medical condition.

*Id.*

Indeed, during her testimony, Hoy had no explanation regarding why her onset date was

January 1, 2011:

> ALJ:   And then it says—it asks when you were—when you
>        became unable to work and you said January 1st, 2011? Do
>        you know what that date is?
>
> HOY:   January 1st, 2011.
>
> Q:     Yes, why is that date significant.
>
> A:     Why did –
>
> Q:     I'm just reading – this is your application, so I'm just
>        wondering –
>
> A:     *I don't recall.*

Tr. 43 (emphasis added).  Given the vagueness of Hoy's testimony, the ALJ was permitted to

discount her credibility.

Hoy argues that the ALJ erred in considering the "reason [she] stopped working" because

her onset date of January 1, 2011, does not coincide with her employment termination date of

March 2010.[2]  In *Bruton v. Massanari*, the court held that the fact a claimant stopped work for

reasons other than her impairments is a sufficient basis to reject a claimant's testimony.  268

F.3d 824, 828 (9th Cir. 2001).  Hoy argues that *Bruton* is not controlling because its holding

applied to a situation where the claimant's alleged onset date coincided with his layoff, which is

not the situation in this case.  *Id.* at 828.

---

[2] Hoy and other women were terminated from their jobs for making claims of sexual harassment.
Tr. 48.  Later, Hoy and those other women all received monetary settlements.  Tr. 49.

The circumstances in this case indeed appear distinguishable from *Bruton* in that the onset date does not coincide with Hoy's termination from employment. However, in referring to Hoy's termination from employment, the ALJ was illustrating one of the different explanations Hoy gave regarding when and why she was unable to return to work. Thus the ALJ did not consider the reason Hoy stopped working for an improper purpose.

### 5.    Daily activities

Finally, the ALJ found Hoy lacked credibility because her daily activities were inconsistent with the severity of her impairments. It appears the ALJ erred in considering this factor. While an ALJ may rely on a claimant's activities in evaluating the claimant's testimony, "[o]nly if [a claimant's] level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Hoy argues that "[t]here is no evidence in the record to suggest that [her] modest activities are inconsistent with her claimed limitations." ECF #17, at 16. Indeed, Hoy's household and personal care activities are of such a limited nature it is reasonable to believe she could perform them even in light of her claimed limitations. Hoy testified that she lives with her mother, and their "big thing" is to go to the post office and Wal-Mart.[3] She describes having a "boring life," and entertains herself by playing with her dog and watching television. Her mother's house is clean, so she does not have to do much housework; however, she washes dishes, can do a load of laundry, and makes microwave meals. Tr. 41–42. Hoy's ability to perform these minimal activities is not inconsistent with her complaints. However, any result of considering this factor is harmless because, as discussed above, the ALJ cited other, valid

---

[3] Hoy's mother drives because Hoy has DUII convictions and cannot legally drive. Tr. 42.

reasons for rejecting Hoy's testimony.  *See Batson*, 359 F.3d at 1195–97 (upholding ALJ's credibility determination where supported by at least one valid reason).

## II.   Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions.  *Carmickle*, 533 F.3d at 1164.  The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight.  *Id.*; *see also* 20 CFR §§ 404.1527(d)(2), 416.927(d)(2).  A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons.  *Ryan*, 528 F.3d at 1198.  If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion.  *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician.  *Orn*, 495 F.3d at 631.  As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may

reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042–43.  An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

### 1.    Treating Physician Jack Kaczmarek, M.D., and Treating Nurse Barbara Alexander, RN/LCP

Hoy first argues that the ALJ erroneously rejected the medical opinions of treating physician Dr. Jack Kaczmarek and treating nurse Barbara Alexander ("Alexander").  In 2014, these providers completed a questionnaire, indicating Hoy's mental symptoms interfered with her ability to sustain attention and concentration needed to perform even simple tasks, and noted moderate to marked cognitive limitations.  Tr. 28, 471–72.  They also endorsed marked social limitations, found that Hoy was avoidant, and that her PTSD was frequently triggered, causing tearfulness and panic symptoms.  Tr. 471–72.

The ALJ rejected the opinions of Dr. Kaczmarek and Alexander because they were contradicted by the opinions of state agency physicians Martin Kehrli, M.D., and Sandra Lundblad, Psy.D., who reviewed the entire record and found that Hoy was capable of performing some work.  Tr. 27, 101–03, 104–07.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ is not permitted to reject this opinion without providing specific and

legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ did so in this case.

The ALJ found that Dr. Kaczmarek and Alexander's opinions of Hoy's ability to function were contradicted by their own treatment notes. Tr. 28. An ALJ may reject a treating physician's responses on a questionnaire when such responses are inconsistent with his or her medical records. *Tommasetti*, 533 F.3d at 1041. As the ALJ noted, Dr. Kaczmarek assessed Hoy's GAF score at 60, indicating only moderate symptoms. Tr. 449. Also, in Dr. Kacsmarek's January 2013 assessment, he indicates that Hoy made good eye contact, had linear thought processes, did not seem particularly depressed, and seemed to have a positive outlook. Tr. 449. Hoy's symptoms even seemed to improve throughout 2013. In May 2013, she was less tearful and had decreased anxiety. Tr. 439. In September 2013, her sadness and tearfulness were again less than usual. Tr. 437. Because the medical records conflict with the limitations Dr. Kaczmarek and Alexander endorsed in their questionnaire, the ALJ correctly used that as a specific, legitimate reason for giving their opinions little weight. *Tommasetti*, 533 F.3d at 1041. Although Hoy provides a reasonable alternative interpretation of the medical records, the ALJ's evaluation of the evidence reflects a rational reading of the record and should be upheld. *See id.* at 1038.

The ALJ also noted that Dr. Kaczmarek and Alexander's opinions were largely based on Hoy's subjective symptom testimony, which the ALJ concluded "bears a number of credibility concerns." Tr. 28. An ALJ may disregard reports premised largely on a claimant's properly discounted subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This finding constituted another specific and legitimate reason to discount Dr. Kaczmarek and Alexander's findings.

2.      **Examining Physician Joshua Russell, M.D.**

Hoy also argues that the ALJ erroneously rejected the opinion of examining physician James Russell, M.D.  Dr. Russell opined that Hoy could stand and walk with normal breaks for at least two hours, but less than six hours in an eight-hour workday.  Tr. 26–27, 353.  He opined that Hoy could sit for up to 6 hours, and lift 20 pounds occasionally and 10 pounds frequently. Tr. 353.  Dr. Russell found that Hoy could kneel, crouch, and crawl without limitations, but that she could never stoop, balance, and climb.  *Id.*  Dr. Russell also opined that Hoy could only occasionally handle, finger, and feel, and that she should not work at heights or around excessive noise.  *Id.*

The ALJ credited Dr. Russell's opinion regarding exertion and environmental factors. Tr. 26.  However, he rejected the remainder of Dr. Russell's opinion, including that Hoy was limited to only occasional handling, fingering, and feeling.  *Id.*  The ALJ rejected that portion of Dr. Russell's opinion because it was "unsubstantiated by the record as a whole."  *Id.* at 27.  An ALJ may discredit a physician's opinion that is conclusory, brief, or unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Dr. Russell's opinion was contradicted by the opinions of the state agency physicians, who found Hoy capable of frequent handling, fingering, and feeling. Tr. 106.  Hoy did not exhibit significant clinical signs to indicate severe limitations in handling, fingering, and feeling.  Tr. 371.  Hoy showed no atrophy and had only slightly reduced strength in her upper right extremity.  *Id.*  On this record, the ALJ provided a specific, legitimate reason for rejecting Dr. Russell's opinion regarding Hoy's limitations on handling, fingering, and feeling.

///

///

### 3.    **Consultative Psychologist Scott Alvord, Psy.D.**

Hoy next argues that the ALJ erred because he rejected Dr. Scott Alvord's assessment of her GAF score. Dr. Alvord assessed a GAF score in the 45 to 50 range, indicating severe limitations in functioning. Tr. 347. Because state agency physicians Dr. Kehrli and Dr. Lundblad did not endorse such marked limitations, the ALJ was required to provide specific, legitimate reasons for rejecting Dr. Alvord's opinion. *Lester*, 81 F.3d at 830; Tr. 101–03, 104–07. Here, the ALJ did so by noting that the GAF score was inconsistent with Dr. Alvord's objective medical testing and clinical observations. *See Batson*, 359 F.3d at 1195 (ALJ may discredit a physician's opinion that is unsupported by the record as a whole); Tr. 28, 342–47. In his medical records, Dr. Alvord noted that Hoy's memory and thought processes were intact and that she performed well on the mental status examination. Tr. 342–47.

The ALJ also found that Dr. Alvord's GAF score was based on Hoy's subjective complaints. Tr. 28. The ALJ is entitled to discredit a medical opinion that is based upon subjective complaints of a claimant that the ALJ has properly found is not credible. *Tonapetyan*, 242 F.3d at 1149. Because the ALJ properly rejected Hoy's testimony, he was therefore entitled to assign less weight to Dr. Alvord's opinion to the extent that it was based on that testimony. *Id.*

## III.    **Step-Two Findings**

Hoy argues that the ALJ erred at step two by omitting migraine headaches, depression, low back pain, diabetes, body aches/osteoarthritis, and pelvic/thigh pain from the list of her "severe" impairments. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. Step-two findings must be based upon medical evidence. 20 CFR §§ 404.1520(a), 416.920(a). An impairment is "not severe" if it

"does not significantly limit [the claimant's] ability to do basic work activities." *Id.* The ALJ may draw inferences about the severity of an impairment based on the degree of treatment the claimant sought. *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995).

Here, the ALJ noted that Hoy's diabetes was controlled with medication, causing no more than minimal limitations. Tr. 21–22. The ALJ also found Hoy's depression to be controlled. Tr. 22. The medical record indeed indicates that Hoy's diabetes and depression were controlled or stable. Tr. 311, 315, 318, 349, 370, 445. On this record, it was reasonable for the ALJ to find that Hoy's diabetes and depression were not severe impairments.

Regarding Hoy's other complaints of headaches and body and back pain, if the ALJ resolved step two in Hoy's favor, any omission of these impairments is harmless if the ALJ considered them in the subsequent steps of the disability evaluation. *Lewis*, 498 F.3d at 911; Tr. 21. Here, the ALJ took into account Hoy's headaches and radiculopathy, and limited Hoy to light work with postural requirements, limited her exposure to hazards, and created environmental restrictions. Tr. 21–23, 27. Accordingly, any error is harmless.

## IV.    Steps Three through Five

This court has carefully reviewed the remainder of the record and the ALJ's conclusions at steps three through five of the sequential analysis in light of its conclusions concerning the ALJ's rejection of Hoy's subjective symptom testimony and rejection of medical testimony by Hoy's treating providers. The ALJ's conclusions regarding Hoy's RFC and the availability of other jobs that Hoy can perform are supported by substantial evidence in the record. Accordingly, this court finds no basis in the record for reversing the Commissioner's decision.

///

///

## RECOMMENDATION

For the reasons discussed above, the Commissioner's decision that Hoy is not disabled is supported by substantial evidence and should be AFFIRMED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Findings and Recommendation will be referred to a district judge.  Objections to these Findings and Recommendation, if any, are due no later than fourteen (14) days from today's date.  If objections are filed, any response is due fourteen (14) days from the date of the objections.  *See* FRCP 6, 72.  Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED this 16th day of December, 2016.

/s/Youlee Yim You___
Youlee Yim You
United States Magistrate Judge